49 CCPA

**Application of Saul A. ELLER.**

**Patent Appeal No. 6764.**

United States Court of Customs and Patent Appeals.

Feb. 13, 1962.

Saul A. Eller, pro se.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran and D. Kreider, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal, prosecuted *pro se,* is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of combination claims 30–33 and method claims 34–37 in application Ser. No. 415,726 filed March 12, 1954, entitled "Improvements In Protected Storage Battery And Method." No claim has been allowed.

The invention of the appealed claims has as its object the elimination of "slow" short circuits in storage batteries "due to the presence of substances which are electrical conductors located on the surfaces of * * * [such] batteries *and in electrical contact with the [battery] terminals."* [Our emphasis.]

Appellant's object is achieved in the following manner (we quote from his brief):

"He first cleans the top wall and all parts thereon to remove the electrically conductive solutions, grease, dirt and other foreign matter. Following connection of the leads to the external circuit he applies an adherent continuous coating of dielectric material *onto the top wall and parts thereon,* except for the vent plugs and a short radial distance therefrom. * * * *said coating completely encapsulates all parts on the top wall* and provides a continuous impenetrable barrier which prevents the electrically conductive solutions from contacting metallic parts of the battery." [Emphasis ours.]

Claim 30 is representative and reads as follows:

"30. A protected storage battery comprising an insulated casing having a top wall, terminal posts projecting above said top wall, cable attachments secured to said terminals, and a continuous adherent coating formed on said top wall and over the exposed surfaces of said terminal posts and cable attachments, said coating being constituted by a solid dielectric material, whereby discharge of the battery due to formation of a conductive film on the top wall of the casing and in contact with said posts is obviated."

The sole reference relied on is:

McLean 1,801,282 April 21, 1931.

The McLean specification begins by stating:

"This invention relates to electric batteries and more particularly batteries having exposed terminals or connections. Where corrosive electrolytes are employed in such batteries and are *spilled or creep over the terminals and connections,* these become corroded, and more or less trouble ensues." [Emphasis ours.]

It is then stated by McLean that "*corrosion and incrustation*" may interfere with proper functioning, and the accidental placement of "metal or a tool" across terminals may result in the short circuiting, of the storage battery.

The McLean specification states further that to provide a "battery which would be exempt from such difficulties, and at the same time * * * [avoid] * * * radical change of form" one should proceed as follows:

"The exposed current-carrying parts are coated with a coating * * * which sets to an adherent condition, and which may be made up of material affording a non-corrosion protective coat. Advantage-

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of

Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

ously at the same time the property of electrical insulation may be provided by requisite selection of material.

\*   \*   \*   \*   \*   \*

"In accordance with the present invention however, a definite coating of sufficient toughness and body may be provided, to give a permanent character irrespective of temperatures to which the battery may be exposed in the course of use, and not only may *the surfaces liable to corrosion from the creeping electrolyte be adequately protected* and the life and utility of the terminals correspondingly prolonged, but at the same time by reason of its insulative property, *the coating may protect against accidental short circuiting from contact with metallic articles which might happen to be placed on top of the battery."* [Emphasis ours.]

The McLean coating clearly does not "encapsulate all parts on the top wall" of the battery and this is the only real point of difference from applicant.

The board analyzed appellant's arguments and commented thereon as follows:

Appellant's principal argument is as follows:

"Applicant's coating differs structurally from McLean's in that the terminals, all metal appurtenances *and* the top wall in the immediate vicinity thereof are coated with a continuous adherent film of dielectric material. This continuous film of coating material provides a positive seal at all live connections and has no edges or discontinuities through which electrolytic solutions can permeate or creep beneath in the immediate vicinity of live connections. Thus, applicant's coating provides a positive, effective mechanical and electrical insulation barrier to prevent electrolytic solutions from contacting live connections, thereby preventing a short

circuit of the battery. The unexpected result indicative of invention brought about by the applicant is a battery protected against short circuit on the top wall thereof, a condition previously unobtainable."

"\*   \*   \* Appellant assumes that the electrode coating of McLean will extend barely to the surface of the top wall of the battery and that there will be gaps between the dielectric coating and the dielectric of the top wall of the battery. Considering the patentee's stated purpose of preventing corrosion, we do not think that appellant's view is justified. We do not see that any person of ordinary skill in this art, or even a layman, would fail to protect the entire exposed surface of the electrodes by carrying \*   \*   \* [McLean's] dielectric coating into sealing contact with the dielectric top wall of the storage battery.

The step of cleaning the surface to be coated [recited in claims 34-37] is so much the usual practice that we would regard its omission as being indicative of poor mechanical practice. The process claims, therefore, cover merely the application of coating by the most obvious procedures."

We believe that the above-stated position of the board is entirely sound.

Appellant has very ably presented his arguments concerning the inappositeness of the McLean reference's disclosure. However, we find the conclusion inescapable that McLean was concerned with the identical problem, only in its broader aspects, which concerns appellant. We find this conclusion supported by McLean's specification which, as quoted above, states in effect that one of the problems toward a solution for which his invention was directed was that encountered from the *spilling* of electrolytes over the *terminals and connections.* In view of such a disclosure, McLean clearly intended to provide, as does appellant, "a continuous impenetrable barrier which prevents \*   \*   \* electrical-

ly conductive solutions from contacting metallic parts of the battery." If he did not quite say so in so many words, one of ordinary skill would know, from what he does say, that this would have to be so.

So far as the record before us shows, it appears to be *new* with appellant to "encapsulate all parts on the top wall" of a storage battery. No doubt appellant's *claimed invention* is useful.[1] But the issue for our consideration is the *obviousness* of appellant's claimed invention, for unless it would not have been obvious, it cannot be patented, 35 U.S.C. § 103.

The broad concept of encapsulating assembled conductive members by means of an insulating, corrosion resistant material was not first conceived by appellant. We judicially note that it was well known at the time of appellant's invention to so encapsulate conductive members which would otherwise be attacked by corrosive fluids. We further judicially note that cleaning a surface prior to coating of such surface, be it even with household paint, is a common procedure

to assure adherence of the coating compound to the coated surface. We agree with the solicitor that as to this aspect of appellant's invention: "[a skilled person would find it] obvious to extend the coating for the conductive parts in McLean over part or all of the top wall of the battery to provide maximum protection against leakage of liquids to the conductive parts."

Claim 33 calls for the coating to be of polymerized chloroprene. The board stated, and it is not contested, that this substance had "known dielectric properties." We do not consider the limitation to be material. Similarly, inasmuch as appellant has not argued the criticality of the limitations in claims 36 and 37 that the "coating" be in "solution" form, we do not consider these limitations material. Furthermore, McLean's coating was in solution form. It is conventional to apply coatings in such form.

In view of the foregoing, we feel that, as provided in 35 U.S.C. § 103, "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a

---

1. The issue of lack of utility was raised in the examiner's Final Rejection and again in his Answer. The Board of Appeals, while affirming "the rejection * * * for the reasons stated by the examiner," did not expressly comment on this utility issue. The board's basis for affirming the examiner, while not entirely clear from its first decision, did appear, from its decision on appellant's Request for Reconsideration, to be based on the *obvious* nature of appellant's claimed invention in view of the McLean reference and the knowledge of "a person of ordinary skill in the subject art." Since we feel that appellant's invention would be obvious to one skilled in the art to which this invention pertains, we shall consider the utility question only briefly.

The examiner stated in his Answer that:

The claim is fully met excepting that the coating of McLean does not cover the "top wall". It is [the] position of the examiner that this coating on the top wall does not add to the protective action and that McLean obtains just as good a result as does applicant when the patentee coats all the exposed leads.

Thus, it is held that the additional "top wall" cover *has no utility*. [Emphasis ours.]

This rejection combined the "met by McLean" and "lack of utility" rejections made by the examiner in his Final Rejection.

We know of no statutory ground for dissecting appellant's coating and thereafter considering the *utility* of each segment in the light of the odd idea that if a patent were issued "the public might be put to expense in purchasing an article for which there is no real need," as the examiner put it in his Final Rejection.

If one skilled in the art of encapsulating conductive elements of batteries might not consider it necessary, as in fact it is not necessary, to encapsulate the entire top wall of a McLean-type battery to achieve appellant's desired results, this fact, by itself, would not negate the "utility" of appellant's invention. Considerations such as obtaining "just as good a result" are, however, pertinent in considering the *obviousness* of the claimed invention; it is on this basis that we decide this case.

whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which such subject matter pertaine[d]."

The decision of the board is affirmed. Affirmed.